United States District Court
Southern District of Texas
**ENTERED**
November 14, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BESTWAY OILFIELD, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-24-2996 |
| | § | |
| MICHAEL MAPES, ORLIN MATUTE MURILLO, and SERVICEPLUS, LLC | § | |
| | § | |
| Defendants. | § | |

FINDINGS OF FACT & CONCLUSIONS OF LAW
& ORDER OF PRELIMINARY INJUNCTION

Pending before the Court is Plaintiff's Motion for Temporary Restraining Order and Request for Preliminary Injunction (Document No. 7). Starting on October 7, 2024, the Court conducted a two-day hearing as to the motion for preliminary injunction (the "Hearing"). At the Hearing, the Court received evidence and heard sworn testimony. Having considered the motion, evidence, and oral argument presented at the Hearing, and applicable law, the Court now enters the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). Any conclusion of law that should be construed as a finding of fact is hereby adopted as such. Any finding of fact that should be construed as a conclusion of law is hereby adopted as such.

## I. BACKGROUND

This is a matter arising out of an employment dispute. Plaintiff Bestway Oilfield, Inc. ("Bestway"), an oilfield services company that sells specialized oilfield equipment, employed Defendants Michael Mapes ("Mapes"), a branch manager, and Orlin Matute Murillo ("Murillo"), a valve technician, both of whom worked extensively with Bestway's patent-pending frac valve technology. Bestway contends that the frac valve is revolutionary for the oil and gas industry, and that the technology is a proprietary trade secret of Bestway. After five years of employment at Bestway, in June 2021, Mapes and Murillo left Bestway to work for Defendant ServicePlus, LLC ("ServicePlus"), a direct competitor of Bestway in the oil field servicing business. Bestway alleges that Maples and Murillo violated their employment agreement with Bestway and threatened to share confidential and protected trade secret information with ServicePlus prior to their departure. Bestway also alleges that Mapes downloaded and retained sensitive information about Bestway's business, placing Bestway at a competitive marketplace disadvantage.

Based on the foregoing, on August 12, 2024, Bestway filed suit in this Court against Defendants, alleging a variety of federal and state claims stemming from Mapes and Murillo's departure from Bestway and subsequent employment at ServicePlus. On August 14, 2024, Bestway moved for a temporary restraining order ("TRO") and preliminary injunction, as well as expedited discovery. On August 26,

2024, the Court issued a TRO. On September 17, 2024, the Court extended the TRO based on an agreement made by the parties, ordering that the TRO shall remain in effect until supplanted by the Court's ruling herein.

## II. FINDINGS OF FACT

The following facts have been established by a preponderance of the evidence:

### *A. Procedural Posture*

1. On August 14, 2024, Bestway filed its Verified Motion and Memorandum of Law Requesting a Temporary Restraining Order and Expedited Discovery.[1]

2. On August 26, 2024, the Court entered a Temporary Restraining Order ("TRO") that granted Bestway's motion in part. The Court ordered the Defendants to return any confidential, proprietary, or trade secrets in their possession to Bestway, prohibited the Defendants from using such information, and granted certain expedited discovery to Bestway.[2]

3. On September 9, 2024, the Court entered an order extending the TRO by an additional fourteen days and set a preliminary injunction hearing for September 16, 2024.[3]

---

[1] *Plaintiff's Verified Motion and Memorandum of Law Requesting a Temporary Restraining Order and Expedited Discovery*, Document No. 6 at 1–26.

[2] *Temporary Restraining Order*, Document No. 19 at 1–4.

[3] *Order Extending the TRO*, Document No. 26 at 1–2.

4. On September 17, 2024, the Court reset the preliminary injunction hearing for October 7, 2024, and subsequently extended the TRO until supplanted by the Court's ruling herein.[4]

5. On October 7 and October 8, 2024, the Court heard testimony related to Bestway's request for preliminary injunction.

***B. Bestway Oilfield, Inc.***

6. Bestway manufactures, sells, rents, repairs, and services specialized oilfield equipment, including high-pressure frac valves and other equipment.[5]

7. Bestway has seven branches in the United States and Canada and serves clients nationally and internationally.[6]

8. Bestway is headquartered in Channelview, Texas, with a branch location in Burgettstown, Pennsylvania.[7]

***C. Michael Mapes***

9. Mapes began his employment with Bestway in 2015 as a Quality Supervisor.[8]

---

[4] *Second Order Extending the TRO*, Document No. 34 at 1–2.

[5] *Preliminary Injunction Hearing Day 1*, Document No. 48 at 14:1-4, 18:8-18.

[6] *Preliminary Injunction Hearing Day 1*, Document No. 48 at 15:20-22, 182:23-25, 188:4-17.

[7] *Preliminary Injunction Hearing Day 1*, Document No. 48 at 16:3–10.

[8] *Preliminary Injunction Hearing Day 1*, Document No. 48 at 6:17-23.

10. From the date of his initial employment, Mapes was granted access to Bestway's electronic system known as Basis, which contains all of Bestway's financial, customer, and vendor data.[9]

11. In 2020, Mapes was promoted to the role of Branch Manager at Bestway for its Burgettstown, Pennsylvania location.[10]

12. In conjunction with his promotion to Branch Manager, Mapes executed an At-Will Employment Agreement effective May 12, 2020 ("Employment Agreement"), which includes several restrictive covenants, including a non-competition clause.[11]

13. As Branch Manager, Mapes was one of Bestway's key management-level employees and had intimate knowledge regarding many facets of Bestway's operations, including full access to Bestway's password-protected electronic system, full access to all of Bestway's customers, vendors, sales order and purchase order information and other confidential information.[12]

---

[9] *Preliminary Injunction Hearing Day 2*, Document No. 49 at 11:23-12:22

[10] *Preliminary Injunction Hearing Day 1*, Document No. 48 at 38:17-39:12.

[11] *Plaintiff's Verified Motion and Memorandum of Law Requesting a Temporary Restraining Order and Expedited Discovery*, Document No. 7, Exhibit 1 (*Declaration of Mark Albert in Support of Motion for Temporary Restraining Order*) [hereinafter *Albert Declaration*] at ¶ 8.

[12] *Preliminary Injunction Hearing Day 1*, Document No. 48 at 15:9-17, 43:15-25, 44:1-9, 185:17-19, 187:18-25, 188:1-3, 189:12-25, 190:1-10, 191:11-25, 192, 1-7.

### *D. Orlin Murillo*

14. Orlin Murillo was initially employed at Bestway as an hourly Valve Technician and later received a promotion to Valve Technician Instructor.[13]

15. As a Valve Technician Instructor, Murillo trained other valve technicians on the proper Bestway procedures for teardown, repair, and assembly for both Bestway's legacy valves and the proprietary valve technology.[14]

### *E. ServicePlus*

16. In or about June 2024, first Murillo and then Mapes resigned from Bestway to work for Defendant ServicePlus.[15]

17. ServicePlus is in the business of manufacturing and servicing oilfield equipment, including seals and valves, used for fracking operations in the oilfield and sells to customers nation-wide and worldwide.[16]

18. ServicePlus is Bestway's direct competitor.[17]

---

[13] *Preliminary Injunction Hearing Day 1*, Document No. 48 at 210:7–6.

[14] *Preliminary Injunction Hearing Day 1*, Document No. 48 at 48:2-7.

[15] *Albert Declaration, supra* note 11 at ¶ 9.

[16] ServicePlus markets itself to customers as "Your Frac Equipment Solutions Partner" and "A Manufacturer of Valve Parts, Seals, and Components." https://serviceplusoilfield.com/about-us/, last visited November 13, 2024.

[17] *Preliminary Injunction Hearing Day 1*, Document No. 48 at 33:12-16, 213:20-23.

19. ServicePlus is owned and was started in September 2018 by Jacob Cox ("Cox"), who is also a former Bestway employee.[18]

### *F. Trade Secrets and Alleged Misappropriation*

20. Over the past few years, Bestway spent tens-of-millions of dollars developing a serviceless frac valve technology which enables greaseless and serviceless frac operations while simultaneously eliminating sand and particle intrusion (hereinafter, "Proprietary Valve Technology").[19]

21. Bestway contends that when they resigned, both Mapes and Murillo told their supervisors at Bestway that Cox recruited them specifically to help develop and build ServicePlus's frac valve department for their knowledge concerning Bestway's Proprietary Valve Technology.[20]

22. Bestway also contends that an examination of Mapes' work laptop at Bestway revealed that on June 10, 2024, in the last ten days before his departure, Mapes exported confidential customer and vendor information from Bestway's

---

[18] *Preliminary Injunction Hearing Day 1*, Document No. 48 at 32:18-19, 120:14-22, 121:14-21.

[19] *Preliminary Injunction Hearing Day 1*, Document No. 48 at 19:3-5, 23:20-25, 24:1-19.

[20] *Albert Declaration, supra* note 11 at 7, 10; *Preliminary Injunction Hearing Day 1*, Document No. 48 at 43:5-7, 45:17-23.

system in a spreadsheet containing a list of Bestway's Texas and Louisiana customers, their order history, and their payment history.[21]

23. Bestway also contends that Murillo took multiple photographs of Bestway's Proprietary Valve Technology that is not out on the market yet, including the 3-inch prototype valve and its component parts and how they assemble.[22]

24. Bestway contends that Murillo not only shared those photographs with Mapes, but also retained them on his phone after joining ServicePlus.[23]

25. Bestway showed photographic evidence at the Hearing contending that Murillo's cellphone contained photographs of Bestway's Properietary Valve Technology for the Mark V valve, which corresponds directly to valve conversions done for the customers included in the list allegedly exported by Mapes.[24]

26. As of July 2024, Mapes works for ServicePlus as a General Manager in its Channelview, Texas location and part of his job description is to oversee the "valve department" at ServicePlus.[25]

---

[21] *Preliminary Injunction Hearing Day 1*, Document No. 48 at 194-201.

[22] *Id.*

[23] *Preliminary Injunction Hearing Day 2*, Document No. 49 at 93-102.

[24] *Preliminary Injunction Hearing Day 2*, Document No. 49 at 101:21-25, 102:1.

[25] *Preliminary Injunction Hearing Day 1*, Document No. 48 at 174:14-16.

27. As of June 2024, Murillo works for ServicePlus as a valve mechanic in its Channelview, Texas location.[26]

28. Based on the foregoing, on August 12, 2024, Bestway filed suit in this Court alleging a variety of federal and state claims stemming from Mapes and Murillo's departure from Bestway and subsequent employment at ServicePlus. On August 14, 2024, Bestway filed a motion requesting injunctive relief, which the Court now addresses herein.

## III. CONCLUSIONS OF LAW

### *A. General Statements of Law*

29. The Court has personal jurisdiction over Bestway based on its principal place of business being located in Channelview, Texas.

30. The Court has personal jurisdiction over ServicePlus based on its principal place of business being located in Houston, Texas.

31. The Court has personal jurisdiction over Mapes and Murillo based on their residence being in Houston, Texas.

32. The Court has federal question and supplemental jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1367.

33. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

---

[26] *Preliminary Injunction Hearing Day 1*, Document No. 48 at 174:17-18.

***B. Preliminary Injunction***

34. To obtain a preliminary injunction, an applicant must show: (1) substantial likelihood of success on the merits; (2) substantial threat of irreparable injury if the injunction is not issued; (3) the threatened injury outweighs harm to the defendant; and (4) the injunction will not disserve the public interest. *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006); Enrique *Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir. 2000).

***C. Substantial Likelihood of Success on the Merits***

35. The Court focuses on Bestway's Defend Trade Secrets Act ("DTSA") claim. The DTSA authorizes a Court to grant equitable relief to a private party that has suffered a misappropriation of trade secrets "used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. §§ 1836(b)(1), (3). To state a claim under the DTSA, a plaintiff must allege: (1) a trade secret; (2) misappropriation; and (3) use in interstate commerce. 18 U.S.C. § 1836.

36. As to the first element, Bestway has presented substantial evidence that the information at issue in this case are protected trade secrets. The trade secrets at issue include the technical specifications, design, and photographs for Bestway's Proprietary Valve Technology, and other Confidential Information relating to Bestway's customers; customer contact information; sales order

histories; and purchase order histories.[27] Bestway has taken reasonable measures to ensure the secrecy of this information, such as participating in the patent application process and requiring its employees to sign confidentiality clauses.[28]

37. As to the second element, "misappropriation" includes the "disclosure or use of a trade secret of another without express or implied consent by a person who... at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was... acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B). Bestway has presented substantial evidence that Mapes and Murillo are in possession of Bestway's trade secrets, such as the photographs shared between the two showcasing Bestway's patent-pending valve technology. Bestway also presents evidence that ServicePlus used those trade secrets to try and develop greaseless and serviceless valve technology similar to Bestway's, and to establish a new valve department to compete with Bestway.[29]

---

[27] *Plaintiff's Hearing Exhibits*, Document No. 52, Exhibit 4.23; *Preliminary Injunction Hearing Day 1*, Document No. 48 at 194-201.

[28] *Preliminary Injunction Hearing Day 1*, 25:18-25, 27:14-25, 28:25.

[29] *Preliminary Injunction Hearing Day 1*, Document No. 48 at 43:5-7, 45:17-23, 50-54.

38. As to the third element, "use of a trade secret means commercial use by which a person seeks to profit from the use of the secret." *Gen. Universal Sys., Inc. v. HAL Inc.*, 500 F.3d 444, 450 (5th Cir. 2007). Courts have found that "use" of a trade secret includes "soliciting customers through the use of information that is a trade secret" or "relying on the trade secret to assist or accelerate research or development." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 279 (5th Cir. 2012). Here, Bestway presented substantial evidence that ServicePlus specifically recruited Mapes and Murillo to help build their own valve department, and deliberately targeted Bestway's employees for their knowledge and experience in an effort to accelerate their own research and development of a competing technology.[30] The evidence also demonstrates that this use is in interstate commerce because, like Bestway, ServicePlus does business with customers across state lines.

39. Accordingly, Bestway can show a likelihood of success on the merits, to the extent necessary for a preliminary injunction.

***D. Substantial Threat of Irreparable Injury***

40. ServicePlus contend Bestway has not shown a substantial threat of irreparable harm, because: (1) Bestway's delay in filing suit precludes irreparable injury;

[30] *Albert Declaration, supra* note 11 at ¶¶ 7, 10, *Preliminary Injunction Hearing Day 1*, Document No. 48 at 43:5-7, 45:17-23.

and (2) there is no evidence Bestway has established any concrete injury that would arise absent a preliminary injunction.[31]

41. Irreparable harm requires a showing that harm to the plaintiff is imminent, and that the plaintiff has no other adequate remedy at law. *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 608 (N.D. Tex. 2006) (Lindsey, J.) (citing *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975)). Irreparable harm is presumed in cases involving trade secrets misappropriation. *Glycobiosciences, Inc. v. Woodfield Pharm., LLC*, No. 4:15-CV- 02109, 2016 WL 1702674, at *8 (S.D. Tex. Apr. 27, 2016) (holding that "the damages occasioned by a case involving breach of confidentiality and misappropriation of trade secrets is, by its nature, irreparable); *see also IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 200 (Tex. App.—Ft. Worth 2005) (noting that "when a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed" and "[t]he threatened disclosure of trade secrets constitutes irreparable injury as a matter of law"). Further, the loss of a business' customers is an injury incapable of ascertainment in monetary terms and may thus be classified as irreparable. *See e.g., Alliantgroup, L.P. v. Feingold*, No. H-09-0479, 2009 WL 1357209, at *2

[31] *Defendant Service Plus LLC's Findings of Fact and Conclusions of Law*, Document No. 57 at 35-38.

(S.D. Tex. May 11, 1990) (mem. op.) (finding that plaintiff "has shown a substantial threat of irreparable harm because of the loss of goodwill and customers and from the likely disclosure of confidential information"); *see also Miracle Appearance Reconditioning Specialists, Intern., Inc. v. Harris*, No. 4:07-CV-524-A, 2007 WL 3005638, at *2 (N.D. Tex. Oct. 11, 2007) (mem. op.) (entering preliminary injunction against a defendant after plaintiff's showing that it would "suffer irreparable harm through the loss of customers and loss of goodwill").

42. At the Hearing, Bestway presented substantial evidence that it will be at a competitive disadvantage if Defendants use its trade secrets to develop technology similar to or the same as its Proprietary Valve Technology. Bestway also showed that without an injunction, Bestway faces serious risk that a reliance on Bestway's confidential information including customer lists will harm Bestway's existent customers.[32]

43. Therefore, the Court finds Bestway met its burden to show irreparable harm will be caused in the absence of injunctive relief.

***E. Balance of the Harms***

[32] *Albert Declaration*, *supra* note 11 at ¶¶ 7, 10; *Preliminary Injunction Hearing Day 1*, Document No. 48 at 43:5-7; 45:17-23.

44. Determining if the balance of the hardship favors the party seeking the injunction requires a court to consider "the competing claims of injury and . . . the effect on each party of the granting or withholding of the requested relief." *Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 336 (5th Cir. 2013) (per curiam) (quoting *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008)).

45. With regards to Bestway's request to enforce Mape's non-compete clause, "[t]exas courts note that non-compete covenants that contain either an industry-wide exclusion from subsequent employment and/or that prevent contact with clients with whom the employee had no contact are unenforceable." *Transperfect*, 594 F.Supp. 2d at 754 (*citing Peat Marwick Main & Co v. Haass*, 818 S.W.2d 381, 386-387 (Tex. 1991)). Bestway contends that the non-compete agreement between Mapes and Bestway is reasonable and agreed to by Mapes. Defendants contend that, as written, Mapes' non-competition agreement with Bestway operates as an industry-wide ban that would prohibit Mapes from working for a company that services customers with which neither Bestway nor Mapes had a prior relationship, and it does so well outside the territory in which Mapes worked.[33]

---

[33] *Plaintiff's Hearing Exhibits*, Document No. 52, Exhibit 2 at 6-7 (*Mapes Employment Agreement with Bestway*).

46. Defendants contend that an injunction containing a provision barring Mapes from working at ServicePlus will cause significant harm that is both immediate and drastic. Mapes testified that he supports his wife and two young daughters, and that he relies on his income from ServicePlus.[34] With his highest level of education being a high school diploma, Mapes has worked in the oil and gas industry since the age of 18 and has built his entire career in this sector. Based on these reasons, Defendants contend that enforcing Bestway's non-compete agreement against Mapes would be inequitable, as it would effectively bar him from working in the only industry in which he has experience.

47. Based on the foregoing, the Court declines to enforce the non-compete clause of Bestway and Mapes' Employment Agreement and find it to be an overbroad industry wide exclusion. Accordingly, the Court finds Bestway has failed to show the balance of harm weighs in its favor with respect to Mapes non-compete clause in his employment agreement with Bestway.

48. With regards to Bestway's remaining injunctive relief requests related to the use of Bestway's trade-secret and proprietary information, Bestway contends that the only harm an injunction would impose upon Defendants is their

---

[34] *Preliminary Injunction Hearing Day 2*, Document No. 49 at 24:8-25:5.

inability to violate the law, which, according to the Fifth Circuit "is really no harm at all." *McDonald v. Longley*, 4 F.4th 229, 255 (5th Cir.2021).

49. Based on the Fifth Circuit's guidance, the Court finds that Bestway has shown the balance of harm weights in its favor with respect to its injunctive relief requests related to the use of Bestway's trade secret and proprietary information.

***F. Public Interest***

50. The public interest favors protection of trade secrets to protect legitimate competition, encourage investment in business and innovation and ultimately protect jobs. *Metallurgical Industries, Inc. v. Fourtek*, 790 F.2d 1195, 1201 (5th Cir. 1986) ("If a businessman has worked hard, has used his imagination, and has taken bold steps to gain an advantage over his competitors, he should be able to profit from his efforts. Because a commercial advantage can vanish once the competition learns of it, the law should protect the businessman's efforts to keep his achievements secret").

51. The Court finds protecting Bestway's trade secrets from misappropriation does not disserve the public interest.

52. Because Bestway has met its burden to establish all four factors are met, the Court finds Bestway is entitled to a preliminary injunction. The Court next turns to what bond, if any, is necessary to protect Defendants.

### *G. Bond*

53. Federal Rule of Civil Procedure 65 provides that the Court may issue a preliminary injunction only if "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added). The amount of the security "is a matter for the discretion of the trial court." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).

54. Here, Defendants contend that the appropriate bond in this matter should be set at $280,000.00, an amount equal to two years of Mapes salary at ServicePlus. Bestway contends that a bond of $1,000.00 is more appropriate and was agreed to by Mapes in his employment contract with Bestway as sufficient to secure equitable relief.[35]

55. Considering the Court's conclusion of law that Mapes non-compete clause is unenforceable, the Court finds that $1,000.00 is an appropriate amount of bond for purposes of this preliminary injunction.

## IV. CONCLUSION

Based on the foregoing, the Court hereby

[35] *Mapes Employment Agreement with Bestway*, *supra* note 28 at 9.

**ORDERS** that Plaintiff's Motion for Temporary Restraining Order and Request for Preliminary Injunction (Document No. 7) is **GRANTED IN PART** and **DENIED IN PART.** The Court

**ORDERS** that Bestway's injunctive relief request to enforce the non-compete clause of Mapes' Employment Agreement with Bestway is **DENIED AT THIS TIME**. The Court further

**ORDERS** that Defendant Mapes is immediately enjoined from (1) using Bestway's confidential, proprietary and trade secret information to attempt to solicit business with or interfere with Bestway's business; and from (2) using Bestway's Confidential Information to solicit, recruit or encourage other Bestway employees to leave their employment with Bestway. The injunction shall remain in effect throughout the pendency of this case. The Court further

**ORDERS** that Defendants Mapes, Murillo, and ServicePlus are enjoined (1) from possessing or engaging in any use or disclosure of confidential, proprietary and trade secret information belonging to Bestway; and (2) to return all of Bestway's confidential, proprietary and trade secret information in their possession, including but not limited to photographs of Bestway's Proprietary Valve Technology, customer and sales information. To do so, Defendants shall within ten (10) days of this Order turn over any and all of their electronic devices, including computers, laptops, and cellular phones, to a third-party forensic expert to search for and delete

such confidential, proprietary and trade secret information. The injunction shall remain in effect throughout the pendency of this case.

**ORDERS** that Plaintiff Bestway Oilfield, Inc. shall post a bond in accordance with Federal Rule of Civil Procedure 65(c) in the amount of $1,000.00. The preliminary injunction shall go into effect after Bestway Oilfield, Inc.'s bond is posted and approved by the Court.

SIGNED at Houston, Texas, on this 14 day of November, 2024.

DAVID HITTNER
United States District Judge